1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Timothy M. Bechtold (PHV pending)
BECHTOLD LAW FIRM, PLLC
317 East Spruce Street
P.O. Box 7051
Missoula, MT 59807-7051
406-721-1435
tim@bechtoldlaw.net

Richard A. Smith, WSBA #21788
Smith & Lowney, PLLC
2317 E. John St., Seattle, WA 98112
206-860-2124
richard@smithandlowney.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES FOREST SERVICE,<br><br>Defendant. | ) CV<br>)<br>)<br>)<br>) **COMPLAINT**<br>)<br>)<br>)<br>)<br>) |

Plaintiff alleges as follows:

1.    This is an action for declaratory and injunctive relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*, and the National Forest Management Act ("NFMA"), 16 U.S.C. § 1600, *et seq.*

2.    Plaintiff Forest Service Employees for Environmental Ethics ("FSEEE" or "Plaintiff") challenges Defendant U.S. Forest Service's decision to grant a special-use permit to the U.S. Navy ("Navy") to conduct electronic warfare training on the Olympic National Forest.  The Forest Service permit authorizes the Navy to drive three mobile emitter vehicles on National Forest System roads and park in eleven designated pullouts where they will emit electromagnetic energy skyward at passing aircraft.

3.    The electronic warfare training will degrade the backcountry recreational experience enjoyed by FSEEE's members, including Paul Robisch and Donna Osseward, who have used and enjoyed the sites authorized for Navy training purposes and intend to continue to do so in the future. *See* Exhibit 1, attached here. The harm to FSEEE's members' use and enjoyment of these national forest lands is concrete and imminent, as Navy training can begin at any time.

4.    The Forest Service violated NFMA because the Navy's training could

reasonably be accommodated on private land and the Forest Service failed to consider a private land option, as required by the Olympic National Forest's 1989 Land and Resource Management Plan ("Olympic LRMP"). The Forest Service also failed to explain how its permitting decision gives priority to the interests and needs of the general public over those of the Navy, also in violation of the LRMP. Finally, the Forest Service failed to determine that the permitted activity is compatible, and in harmony with, the surrounding landscape, as the LRMP requires.

5.   Plaintiff seeks a judgment declaring that the Forest Service violated the NFMA and APA by permitting the Navy's electronic warfare training and an order setting aside the permit.

## JURISDICTION AND VENUE

6.   This action is brought pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), § 2201 (declaratory judgment), and § 2202 (further relief).

7.   Venue is proper in this Court under 28 U.S.C. § 1391(e) as Defendant U.S.

Forest Service resides in this district, Plaintiff FSEEE has members whose interests are adversely affected by Defendant's action who reside in this district, and the permitted electronic warfare training being challenged will occur in this district.

**PARTIES**

8.   Plaintiff Forest Service Employees for Environmental Ethics is a national environmental organization founded in 1989, incorporated in Oregon, with its headquarters in Eugene, Oregon. FSEEE has 8,000 members nationwide, including members in Washington State. FSEEE's mission is to protect national forests and to reform the U.S. Forest Service by advocating environmental ethics, educating citizens, and defending whistleblowers. FSEEE and its members have long-standing interest and expertise in national forest management.

9.   FSEEE's members live, work, recreate, and engage in other activities that have been, are being, and will continue to be adversely impacted by the Navy's electronic warfare training. In addition, the aesthetic, conservation, recreational, economic, scientific, informational, and procedural interests

of FSEEE and its members have been, are being, and, unless the relief prayed for herein is granted, will continue to be adversely affected and irreparably injured by the U.S. Forest Service's failure to comply with federal law as described below.

10.    Defendant U.S. FOREST SERVICE, an agency of the U.S. Department of Agriculture, issued the Navy's electronic warfare training permit.

**FACTUAL BACKGROUND**

11.    As required by the National Forest Management Act, in 1990 the Forest Service promulgated the Olympic LRMP. NFMA requires that permits for the use and occupancy of national forests shall be consistent with the land management plans. 16 U.S.C. § 1604(i). The Olympic LRMP includes mandatory standards for the permitting of special land uses, including allowing uses when: 1) such uses cannot reasonably be accommodated on private land; 2) the interests and needs of the general public are given priority over those of the applicant; and, 3) permitted uses are compatible, and in harmony with, the surrounding landscape. *See* Exhibit 2, attached here.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

12.    In 2014 the Navy published a Final Environmental Assessment ("Navy EA") of its proposed Pacific Northwest Electronic Warfare Range. The Range includes a "fixed emitter" located on Washington's coast at the Naval Station Everett Annex Pacific Beach, communication equipment on the state-owned Octopus Mountain, and operation of mobile electronic warfare training systems vehicle-mounted emitters ("mobile emitters") on U.S. Forest Service and Washington Department of Natural Resources lands. A Forest Service special-use permit is required only for the operation of the mobile emitters on national forest land.

13.    The Navy EA does not mention any of the 1990 LRMP's special-use permitting standards. The Navy EA does not consider locating the mobile emitters on private land nor does it explain why the emitters cannot reasonably be accommodated on private land. The Navy EA does not explain how the interests and needs of the general public are given priority over the Navy's interest in deploying mobile emitters on national forest land. The Navy EA does not explain how the mobile emitters will be compatible and in harmony with the surrounding landscape.

14.    On September 26, 2014, the Forest Service invited the public to comment

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

on the Navy's requested special-use permit. The Forest Service received over 500 responses from the public, including from FSEEE. *See* Exhibit 3, attached here.

15.    On October 31, 2014, the Forest Service extended the public comment period to November 28, 2014, by which date the Forest Service had received over 3,000 public responses, including supplemental comments from FSEEE. *See* Exhibit 4, attached here.

16.    On November 29, 2016, the Forest Service announced a draft decision to issue the Navy a special-use permit for operation of mobile emitters on the Olympic National Forest. On January 11, 2017, FSEEE timely objected to the draft decision. *See* Exhibit 5, attached here.

17.    On July 31, 2017, the Forest Service issued its decision permitting the Navy to conduct electronic warfare training by operating mobile emitters on the Olympic National Forest. The decision asserts that "the Navy considered alternatives and determined that the actions cannot be accommodated on private lands." However, the Navy did not consider the use of private lands for mobile emitters; the Navy considered private land only to locate fixed emitters.

18. The decision does not explain how the use of yellow caution tape to restrict the public from mobile emitter sites along national forest roads open to the public gives priority to the interests and needs of the general public over those of the Navy.

19. The mobile emitters and associated yellow caution tape will alter the visual character of the roadside by imposing a military-type appearance. The Forest Service failed to consider this impact of parking military-style vehicles and associated yellow caution tape to the visual character of these backcountry sites visited by national forest recreationists.

**CLAIM FOR RELIEF**

20. The Forest Service's decision to permit the Navy's military training is inconsistent with the 1990 LRMP's applicable, mandatory standards for special-use permits and, thus, violates NFMA, 16 U.S.C. § 1604(i), and should be set aside.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully requests that the Court:

A.      Adjudge and declare that the Forest Service violated NFMA when it issued

the U.S. Navy a special-use permit to operate mobile emitters on the

Olympic National Forest;

B.      Vacate the permit;

C.      Award FSEEE its reasonable fees, expenses, costs, and disbursements,

including attorneys' fees associated with this litigation, under the Equal

Access to Justice Act, 28 U.S.C. § 2412; and,

D.      Grant FSEEE such further and additional relief as the Court may deem just

and proper.

DATED this 15th day of September, 2017.

> s/Timothy Bechtold
> Timothy Bechtold, Pro Hac Vice pending
> BECHTOLD LAW FIRM, PLLC
> 317 East Spruce Street
> P.O. Box 7051
> Missoula, MT 59807-7051
> 406-721-1435, tim@bechtoldlaw.net
>
> s/Richard A. Smith
> Richard A. Smith, WSBA #21788
> Smith & Lowney, PLLC
> 2317 E. John St., Seattle, WA 98112
> 206-860-2124, richard@smithandlowney.com

# Exhibit 1

May 2017

To Whom It Concerns:

My name is Paul Robisch. I am a member of Forest Service Employees for Environmental Ethics. I reside at 11712 36th Ave., Seattle, WA. I am a lifelong outdoor enthusiast. I have hiked, climbed and camped in the state for more than 50 years. That includes dozens of recreational outings to the Olympic Peninsula, including Olympic National Forest and Olympic National Park.

I am opposed to the establishment of an Electronic Warfare Range on the Olympic Peninsula and the deployment of Mobile Transmitters at 12 locations in the Olympic National Forest, several of which I have visited. Such action would harm my ability to enjoy the natural splendor of the Olympic NF.

I arrived in the State of Washington in the mid-1960s when I was in my mid-20's. I have lived in Seattle for the past five decades and have made numerous excursions to the Olympic Peninsula to enjoy the high alpine beauty and the mountaintops, the wilderness beaches, the exquisite wildlife, the magnificent alpine wildflowers, and most of all the peaceful tranquility that is so lacking in metro Seattle.

I have been an avid mountain climber for most of my adult life. By my count, I have successfully reached the summit of 45 peaks on the Olympic Peninsula (see attached spreadsheet). I have climbed difficult Olympic Peninsula peaks such as Mount Cruiser and more remote peaks such as the West Peak of Mount Anderson and the four summits of Mount Olympus. In later decades, after I became too old to ascend peaks that required roped climbing skills, I ascended easier summits. Now I simply hike the peninsula's trails enjoying the magnificent wildflowers at places like Klahhane Ridge and Mount Townsend.

The most memorable outings of my half-century of enjoying the Olympic Peninsula are: (1) a nine-day traverse of the Bailey Range which included spending two incredible nights watching the sun set into the Pacific Ocean from the top of the Snow Dome adjacent to Mount Olympus; (2) a multi-day excursion from the North Fork of the Quinault River to Low Divide; (3) a magnificent five-day Thanksgiving weekend spent at the Olympic National Park's wilderness ocean strip, with daytime sunshine and nighttime frost on the driftwood. The common quality of these three excursions was the peace and tranquility they offered and the rejuvenating feeling of just being away from it all. As I grow older, I treasure these memories even more.

May 2017

If the U.S. Navy is allowed to transform most of the western Olympic Peninsula into a military training area involving the deafening roar of low-flying fighter jets up to 16 hours a day for most days of the year, all what I have enjoyed and hope to continue to enjoy will be denied to myself and to future generations.

I use Forest Service roads to access wild areas on the Olympic Peninsula, both in the national park and in the national forest. I have visited and enjoyed several of the sites where the Navy wants to park the emitters. Recently, I traveled with a friend along several Forest Service roads and stopped at Sites 5, 6, 7 and 8 as identified in the Navy's Environmental Assessment of the Electronic Warfare Range proposal. While these are not pristine locations, they all offer the opportunity for peaceful contemplation and appreciation that I so value when I visit the Olympic Peninsula's public lands. I enjoyed the solitude and the sense of being away from civilization. All four of the sites were replete with birdsong and, at lower elevations, the first wildflowers of spring.

The road to Site 6 (Forest Service Road 2258) was still partially blocked by the winter's snowpack on that recent visit. Our vehicle had to stop about a quarter of a mile from the site. I strapped on my boots and stomped across the snowpack—an experience that brought back wonderful memories of my climbing years. Although the day was cloudy, with a mix of rain and snow, I could see that Site 6 offers a sweeping view to the west down a mountainside to the broad, flat Quinault River valley. It's the kind of place where a family could enjoy a wonderful picnic.

I fully intend to continue to visit the wild places of the Olympic Peninsula—including the areas that the Navy wants to use for its Electronic Warfare Range—as long as I am physically able. The Navy's electronic warfare permit will impair the quality of my recreation experience. The remote and backcountry experience I seek will be sullied by the presence of war-making machines and vehicles on national forest land that is dedicated, by law, to peaceful, non-military, natural resources uses.

Sincerely yours,

Paul Robisch

Paul Robisch

Pursuant to 28 USC §1746, I declare under penalty of perjury that the foregoing is true and correct.

My name is Donna Osseward. I reside at 13245 40th Ave. NE, Seattle WA 98125. I am a member of Forest Service Employees for Environmental Ethics because I support their important mission. I am also President of Olympic Park Associates, a nonprofit group that works to preserve the ecological integrity of the Olympic Peninsula.

As a lifelong resident of Washington who loves to spend time outdoors. Since childhood I have spent countless hours enjoying the spectacular natural beauty of the Olympic Peninsula. I am a frequent visitor to Olympic National Park and Olympic National Forest. I use the Forest Service roads on a regular basis to pursue my outdoor recreational and wilderness preservation activities.

I was alarmed when I learned of a U.S. Navy proposal to establish an Electronic Warfare Training Range on the Olympic Peninsula. My concern is shared by thousands of area residents and by millions more who visit the peninsula each year to enjoy the region's natural splendor.

The Navy is seeking a special use permit from the Forest Service that would allow it to deploy mobile emitter vehicles at 12 locations on the Olympic National Forest, for as many as 260 days per year. The vehicles would shoot electromagnetic signals into the air meant to mimic hostile communications. Navy pilots in fighter jets would try to intercept those transmissions with a search pattern that would fly over much of the public and private lands of the western part of the Olympic Peninsula.

This search pattern would have jets flying, at low-altitudes, in the airspace, not only over Olympic National Forest, but also over Olympic National Park; Washington Islands Wilderness; Olympic Coast National Marine Sanctuary; the Washington Islands National Wildlife Refuges; Washington State Department of Natural Resources land; the Quinault, Quileute, and Hoh Reservations; and thousands of acres of private land, including the towns of Forks and Amada Park.

That would lead to an increase in the noise pollution that's already produced by Navy aircraft in the region. The noise is already too much for enjoying a respite from the noise of the city.

I visit the Olympic National Forest, and Olympic National Park, for the purpose of enjoying the solitude and peacefulness of one of the most spectacular mountain (and seaside) landscapes in the nation. Olympic National Park is a World Heritage Park and International Biosphere Reserve. Over 3.3 million people visit the park every year. This does not count those who visit other destinations on the peninsula, including the Olympic National Forest.

These millions of visitors do not travel to the peninsula to hear and gawk at low-flying warplanes. They visit the Olympic Peninsula to enjoy the area's natural beauty and its peace and quiet.

I am astounded that what the Forest Service proclaims to be a simple special permit to allow emitter trucks to use national forest roads, will disquiet the whole of the west side of the Olympic Peninsula. Allowing this not only disturbs the functions of the Olympic National Forest it impairs the functioning of the many areas surrounding the national forest. It would turn this use of the Olympic National Forest into the neighborhood nuisance no one can do anything about.

This action would greatly impair my ability to enjoy public lands on the Olympic Peninsula in a number of ways.

I have visited several of the sites where the Navy wants to park the emitters, on more than one occasion. Several of the sights offer sweeping views to the west. On a recent visit, I paused to eat lunch at one of the sites where the Navy wants to park the transmitters, which would be cordoned off with warning tape. I enjoyed the wide views and the sound of birds singing and the signature drip-drip-drip of water hitting the forest floor. I wondered why many of the alder trees looked like birch. Was it the wetness of the area turning their bark white?

I fully understand the importance of training to the success of our military forces. I support that training. But there are some places where training is not appropriate. Our government designated Olympic National Park and Olympic National Forest for specific reasons. Creating a venue for military training was not among those reasons. I strongly believe this is not an important venue for intrusive, high-tech war games. This training is, and has, been done for years in Idaho and Nevada. The Navy can move its activities, ONP, ONF, the wildlife refuges, their salmon and wildlife already living there, cannot.

I intend to continue to visit and enjoy the Olympic Peninsula for as long as I am able, including the areas where the Navy intends to park the mobile transmitters. Encountering military equipment at those sites—or along the national forest roads as they travel to and from those sites—will harm my ability to enjoy this wonderful, wild area.

Pursuant to 28 USC §1746, I declare under penalty of perjury that the foregoing is true and correct.

# Exhibit 2

*FOREST-WIDE STANDARDS AND GUIDELINES BY PROGRAM ELEMENT*

I.   **Human and Community Development**

1.   The public, including minorities and the physically challenged, shall be informed of the availability of Forest programs and opportunities.

2.   The Forest shall involve American Indians in Forest planning processes.

3.   If during the scoping phase for project analyses it is determined that American Indian rights are an issue, the potentially affected tribes should be involved in the project planning process.

4.   The Treaty rights and privileges of affected Indian tribes shall be considered and appropriately provided for in all Forest activities. Information about proposed project activities should be shared with tribal groups whose traditional religious practices, sites, or resources may be affected.

5.   Forest activities and programs shall be conducted in such a manner as to protect and preserve the rights (as defined by the American Indian Religious Freedom Act) of American Indians to exercise their traditional religions and freedom to worship through ceremonies and traditional rites, including access to sites and use and possession of sacred objects.

6.   Old-growth cedar should be made available for traditional American Indian cultural and religious uses. The supply of large, old-growth cedar trees shall be monitored to assure that this resource will remain available in perpetuity.

J.   **Lands**

1.   Special use of National Forest land may be authorized when such use cannot reasonably be accommodated on private land. In considering special use applications, the interests and needs of the general public shall be given priority over those of the applicant. Use should be compatible, and in harmony with, the surrounding landscape.

2.   When issued or renewed, special use permits should be consistent with the Goal and Desired Future Condition for each Management Prescription.

3.   Existing nonconforming, incompatible, or inappropriate uses should be terminated on an opportunity basis.

4.   Unless specifically exempted by regulation, all private special uses of National Forest land should be authorized on a charge basis.

5.   Applicants may be required to furnish necessary environmental analysis, surveys, plats, drawings, etc., and provide funds for the processing and administration of permits.

6.   Special use authorizations for use or development of sites and facilities should emphasize:

   a.   The utilization of existing capacities at approved sites.

   b.   Competitive processes for interest by multiple applicants.

   c.   Preparation of environmental analysis, master plans, site charters, surveys, and site development plans.

# Exhibit 3



P.O. Box 11615, Eugene, OR 97440        Tel: (541) 484-2692        Fax: (541) 484-3004        Email:  andys@fseee.org

TRANSMITTED ELECTRONICALLY TO comments-pacificnorthwest-olympic-pacific@fs.fed.us

October 9, 2014

Greg Wahl, Project Lead,
USDA-Forest Service
Olympic National Forest
1835 Black Lake Blvd SW
Olympia, WA  98512

RE:  Pacific Northwest Electronic Warfare Range Special-Use Permit Application

Dear Mr. Wahl:

These timely comments on the U.S. Navy's application for a special-use permit to conduct the Pacific Northwest Electronic Warfare Range project on national forest land are submitted in response to District Ranger Dean Millett's scoping notice of September 26, 2014. The Navy seeks the Forest Service's permission to deploy three Mobile Electronic Warfare Training System vehicle-mounted emitters along national forest roads leading to 14 Olympic National Forest sites during 260 days each year. The emitters will transmit electromagnetic radiation to Navy aircraft to mimic conditions pilots might face in hostile action.

The National Forest Management Act ("NFMA") requires that "permits . . . for the use and occupancy of National Forest System lands shall be consistent with the land management plan[s]." The Olympic National Forest's 1990 land and resource management plan ("LRMP") requires that special-use permits "may be authorized when such use cannot reasonably be accommodated on private land." LRMP at IV-55.

The environmental assessment fails to consider private land for the deployment of the mobile emitters.[1] Thus, the Forest Service has not demonstrated that the mobile emitters "cannot reasonably be accommodated on private land," in violation of the NFMA. The EA's failure to consider a private land alternative also violates the National Environmental Policy Act. 40 CFR 1508.9.

_____

[1] The EA only considered private land for locating "stationary sites," not the mobile emitters proposed for deployment on the national forest. EA at 2-9.

It is apparent from EA's map of proposed emitter locations (EA at 1-3) that private land is in the same neck of the woods as the proposed national forest sites. In fact, the emitters appear to be located predominately near the national forest boundary (e.g., sites 1, 2, 3, 4, 5, 7, 9, 10, 11, and 15), with private land closely adjacent.

The 1990 LRMP also requires that "the interests and needs of the general public shall be given priority over those of the [special-use permit] applicant." LRMP at IV-55. Nowhere does the EA state this mandatory duty nor explain how the proposed deployment of mobile emitters complies with it. That failure alone violates the NFMA. Second, as explained below, the proposal puts the needs of the Navy above those of the general public.

The use of the emitters will require "warning tape and removable 'Electromagnetic Radiation Hazard' signage, which would warn people to not linger inside the taped area." EA at 2-4. Thus, the permit exposes the general public to hazardous radiation in order that the applicant can carry out its training mission. It would be difficult to imagine a more egregious subordination of the public's needs and interests to the applicant's.

Third, the LRMP requires that permitted uses "should be compatible, and in harmony with, the surrounding landscape." LRMP at IV-55. Once again, the EA simply does not mention this standard, in violation of NFMA. Had the EA assessed the compatibility of locating mobile emitters at the proposed sites, the analysis would have shown that the emitters are inconsistent with the LRMP's management prescriptions for visual quality and recreation opportunities.[2]

In regard to visual quality, the EA assesses only the effect of the fixed non-national forest emitters on the visual environment. It never mentions the visual quality effects of the mobile emitters. Yet the mobile emitters will affect at least an order of magnitude more land area as they travel along miles of road and park at over a dozen sites on the national forests for over 70% of each year. The transient nature of the emitters is no justification for ignoring their effect on visual quality; if anything, their proposed ubiquitous presence throughout the western flank of the Olympic National Forest argues for more, not less, visual quality consideration.

It goes without saying that the mobile emitters' appearance influences significantly whether their presence is "in harmony" with the surrounding landscape. On this score the EA is misleading, at best. The EA includes no photograph of the mobile

---

[2] The LRMP prescribes visual quality objectives (e.g., retention, modification) and recreation opportunities (e.g. Roaded Natural, Modified, Rural) for each land allocation. These prescriptions generally reiterate that uses be harmonious in appearance with the natural setting. The EA fails to assess the effects the mobile emitters will have on meeting visual quality objectives or recreation opportunity spectrum ("ROS") prescriptions.

emitters to be deployed. Instead, the EA shows the "conceptual drawing," reproduced below:



[Public news reports](#), however, show that the mobile emitters the Navy will deploy bear little resemblance to the "conceptual drawing." Instead, this is what the Navy has in store for our national forests:



Whereas the "conceptual drawing" looks like a camper van with a small television receiver atop, the real thing looks like a [Star Wars fantasy](#). By no stretch of the imagination would the presence of these space-aged monsters be "in harmony" with the Olympic's sylvan landscape.

In sum, the Forest Service should deny the Navy's application for a special-use permit because the proposed use is inconsistent with the Olympic LRMP.

Sincerely,

Executive Director

# Exhibit 4



P.O. Box 11615, Eugene, OR 97440        Tel: (541) 484-2692        Fax: (541) 484-3004        Email: andys@fseee.org

TRANSMITTED ELECTRONICALLY TO comments-pacificnorthwest-olympic-pacific@fs.fed.us

October 31, 2014

Greg Wahl, Project Lead,
USDA-Forest Service
Olympic National Forest
1835 Black Lake Blvd SW
Olympia, WA 98512

RE: Pacific Northwest Electronic Warfare Range Special-Use Permit Application

Dear Mr. Wahl:

These comments on the U.S. Navy's application for a special-use permit to conduct the Pacific Northwest Electronic Warfare Range project on national forest land are submitted in response to District Ranger Dean Millett's scoping notice of September 26, 2014, and supplement our earlier comments of October 8, 2014.

<u>Electronic warfare training is not a public purpose for which national forests are reserved and administered</u>.

In 1897, pursuant to the 1891 Forest Creative Act, President Grover Cleveland reserved the public land that includes the present-day Olympic National Forest, including the land at issue in the Navy's electronic warfare permit application.

The reservation of federal land, pursuant to statutory authority granted by Congress, "not only withdraws the land from the operation of the public land laws, but also **dedicates the land to a particular public use**." <u>S. Utah Wilderness Alliance v. BLM</u>, 425 F.3d 735, 784-785 (10th Cir. Utah 2005) (emphasis added). A reservation's permissible public uses are defined by the statutory authority under which the reservation was made, and by any subsequent authorizing legislation. Examples of public land reservations include Indian reservations, military reservations, and national parks and monuments. <u>United States v. New Mexico</u>, 438 U.S. 696, 699 (U.S. 1978).

The particular public uses for which Congress has reserved the national forests are set forth in various authorizing statutes. The two original purposes, authorized in the 1897 Organic Act, are to secure "favorable conditions of water flows," and "to

furnish a continuous supply of timber." 16 U.S.C. 475; <u>United States v. New Mexico</u>, 438 U.S. 696, 707 (U.S. 1978) ("The legislative debates surrounding the Organic Administration Act of 1897 and its predecessor bills demonstrate that Congress intended national forests to be reserved for only two purposes – '[to] conserve the water flows, and to furnish a continuous supply of timber for the people.'") In 1960, Congress added outdoor recreation, range, and wildlife and fish to the public purposes for which national forests are to "be administered." 16 USC 528.

In addition to these natural resource public purposes, Congress has also authorized the Forest Service to permit use of national forests for, among other things, telecommunications facilities (43 USC 1761), archaeological site exploration (16 USC 432), and oil and gas pipelines (30 USC 185). So, too, Congress has authorized the Forest Service to permit state or local governments (but not other federal agencies) to construct or maintain "public buildings or other public works" on national forests, at a fair market value price (43 USC 931). At no time, however, has Congress passed a statute authorizing generally the use of national forests for military use, not does any statute authorize specifically the use of the Olympic National Forest for such purpose.

The Forest Service appears to take the position that a different section of the Organic Act, which authorizes the Forest Service to "make such rules and regulations . . . as will ensure the objects of such reservations, namely to regulate their occupancy and use and to preserve the forests thereon from destruction," provides the missing statutory authority to administer the Olympic National Forest for military uses. That view misunderstands this law. Regulating the "occupancy and use" of statutorily authorized uses is a distinct function from defining the permissible uses in the first instance. The fact that Congress has, on many occasions, added to (and, in some cases, subtracted from) the specific uses authorized on national forests shows that Congress understands that the 1897 Organic Act's "occupancy and use" language is not an omnibus catch-all authorizing any and all uses.

In sum, the Forest Service should deny the Navy's application for a special-use permit because Congress has not authorized military training as a permissible use of the Olympic National Forest.

Sincerely,

Executive Director

# Exhibit 5



P.O. Box 11615, Eugene, OR 97440          Tel: (541) 484-2692          Fax: (541) 484-3004          Email:  andys@fseee.org

TRANSMITTED ELECTRONICALLY AND BY U.S. POSTAL SERVICE (CERTIFIED)

January 11, 2017

Reta Laford, Reviewing Officer
USDA-Forest Service
Olympic National Forest
1835 Black Lake Blvd. SW
Olympia, WA  98512

RE:  OBJECTION Pacific Northwest Electronic Warfare Range

Dear Ms. Laford:

By this letter, FSEEE objects to Pacific district ranger Dean Millett's decision to issue a special-use permit to the U.S. Navy to conduct electronic warfare training on the Olympic National Forest. In this letter, we identify specific comments FSEEE made during scoping, the Forest Service's response (if any), and the basis for our objection.

**A.  Electronic warfare training is not a permissible use consistent with the public purposes for which national forests are reserved and administered** (Comment submitted by FSEEE on 10/31/14).

The reservation of federal land, pursuant to statutory authority granted by Congress, "not only withdraws the land from the operation of the public land laws, but also **dedicates the land to a particular public use**." S. Utah Wilderness Alliance v. BLM, 425 F.3d 735, 784-785 (10th Cir. Utah 2005) (emphasis added). A reservation's permissible public uses are defined by the statutory authority under which the reservation was made, and by any subsequent authorizing legislation. Examples of public land reservations include Indian reservations, military reservations, and national parks and monuments. United States v. New Mexico, 438 U.S. 696, 699 (U.S. 1978).

The particular public uses for which Congress has reserved the national forests are set forth in authorizing statutes. The two original purposes, authorized in the 1897 Organic Act, are to secure "favorable conditions of water flows," and "to furnish a continuous supply of timber." 16 U.S.C. § 475; United States v. New Mexico, 438 U.S. 696, 707 (U.S. 1978) ("The legislative debates surrounding the Organic Administration Act of 1897 and its predecessor bills demonstrate that Congress

intended national forests to be reserved for only two purposes – '[to] conserve the water flows, and to furnish a continuous supply of timber for the people.") In 1960, Congress added outdoor recreation, range, and wildlife and fish to the public purposes for which national forests are to "be administered." 16 USC § 528.

In addition to these natural resource public purposes, Congress has authorized the Forest Service to permit use of national forests for, among other things, telecommunications facilities (43 USC § 1761), archaeological site exploration (16 USC § 432), and oil and gas pipelines (30 USC § 185). So, too, Congress has authorized the Forest Service to permit state or local governments (but not federal agencies) to construct or maintain "public buildings or other public works" on national forests (43 USC § 931).

At no time, however, has Congress passed any statute authorizing generally the use of national forests for military use. Nor does any statute authorize specifically the use of the Olympic National Forest for such purpose.

Forest Service Response #1: The permitted military use "does not restrict or affect the Forest Service in implementing its mission of stewardship of the nation's national forests."

*FSEEE Objection*: The issue is whether Congress authorized the Forest Service to permit military use, not whether military use precludes the Forest Service from accommodating the uses Congress has authorized, e.g., recreation, wildlife, conserving water flows, and furnishing timber. The Forest Service's response does not dispute that the Organic Act, which the response quotes, does not authorize the Forest Service to permit military use of national forests.

Forest Service Response #2: The permit complies with the Master Agreement Concerning The Use of National Forest System Lands for Military Activity, signed by the Secretary of Defense (22 September 1988) and the Secretary of Agriculture (30 September 1988).

*FSEEE Objection*:  Neither the Secretaries of Agriculture nor Defense, alone or in combination, have the authority to define the appropriate uses of national forests. Only Congress has that authority. See U.S. Constitution, Article 4, Section 3, Clause 2 ("The Congress shall have power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States . . ."). The Master Agreement relies entirely on the Organic Act to justify military uses of national forests ("The use of these lands for military training activities is within the statutory authority of the Act of June 4, 1897"). However, as discussed above, the Organic Act provides no such authority.

**B.  The Forest Service has not demonstrated that the mobile emitters "cannot reasonably be accommodated on private land," in violation of the National Forest Management Act** (Comment submitted by FSEEE on 10/9/2014).

Even if the Organic Act authorized the Forest Service to permit military use of national forests, which it does not, the National Forest Management Act ("NFMA") requires that "permits . . . for the use and occupancy of National Forest System lands shall be consistent with the land management plan[s]." <u>See</u> 16 USC § 1604(i). The Olympic National Forest's Land and Resource Management Plan ("1990 LRMP") requires that special-use permits "may be authorized when such use cannot reasonably be accommodated on private land." <u>See</u> LRMP at IV-55.

The environmental assessment fails to consider private land for the deployment of the mobile emitters.[1] Thus, the Forest Service has not demonstrated that the mobile emitters "cannot reasonably be accommodated on private land," in violation of the NFMA.[2]

It is apparent from EA's map of proposed emitter locations (EA at 1-3) that private land is in the same neck of the woods as the proposed national forest emitter sites. In fact, the emitters appear to be located predominately near the national forest boundary (e.g., sites 1, 2, 3, 4, 5, 7, 9, 10, 11, and 15) close to adjacent private land.

<u>Forest Service Response</u>: The Forest Service did not acknowledge nor respond to this comment.

*FSEEE Objection*: FSEEE objects to the permitting decision because the Forest Service has not demonstrated that the mobile emitters "cannot reasonably be accommodated on private land," as required by the 1990 LRMP and NFMA. Nor has the Forest Service explained its failure to consider this 1990 LRMP special-use permitting standard by acknowledging and responding to FSEEE's comment.

**C.  The Forest Service fails to give priority to "the interests and needs of the general public . . . over those of the [special-use permit] applicant, in violation of the 1990 LRMP and NFMA** (Comment submitted by FSEEE on 10/9/2014).

The 1990 LRMP requires that "the interests and needs of the general public shall be **given priority** over those of the [special-use permit] applicant." <u>See</u> LRMP at IV-55 (emphasis added). The EA does not acknowledge this mandatory duty nor explain how the proposed deployment of mobile emitters complies with it. The failure to address this mandatory standard violates the NFMA.

---

[1] The EA only considered private land for locating "stationary sites," not the mobile emitters proposed for deployment on the national forest. EA at 2-9.

[2] The Navy-prepared environmental assessment never references the 1990 LRMP, although it does mention a 1994 amendment to the LRMP regarding northern spotted owl habitat. Perhaps the Navy and its consultants didn't know about the 1990 LRMP. Regardless, it is the Forest Service's responsibility, not the Navy's, to be cognizant of and follow its own LRMP.

The use of the emitters will require "warning tape and removable 'Electromagnetic Radiation Hazard' signage, which would warn people to not linger inside the taped area." See EA at 2-4. Thus, the permit excludes the general public from national forest land, elevating the Navy's interests above the public's use of these lands. The EA also acknowledges that the Navy emitters pose a "Radiation Hazard" to the general public. It would be difficult to imagine a more egregious subordination of the public's needs and interests to the applicant's.

Forest Service Response: The Forest Service did not acknowledge that the EA fails to mention this 1990 LRMP standard. Nor did the Forest Service explain in its response to public comments how shutting the public out of these training sites and exposing the public to radiation hazard gives "priority" to the general public over the Navy.

*FSEEE Objection*: FSEEE objects to the permitting decision because the Forest Service failed to address this mandatory 1990 LRMP standard and failed to comply with its terms.

**D.  The Forest Service fails to determine that the Navy's use is "compatible, and in harmony with, the surrounding landscape," in violation of NFMA** (Comment submitted by FSEEE on 10/9/2014).

The 1990 LRMP requires that permitted uses "should be compatible, and in harmony with, the surrounding landscape." See LRMP at IV-55. Once again, the EA does not mention this standard, in violation of NFMA. Had the EA assessed the compatibility of locating mobile emitters at the proposed sites, the analysis may have shown that the emitters are inconsistent with the LRMP's management prescriptions for visual quality and recreation opportunities.[3]

In regard to visual quality, the EA assesses only the effect of the fixed non-national forest emitters on the visual environment. It never mentions the visual quality effects of the mobile emitters. Yet the mobile emitters will affect at least an order of magnitude more land area as they travel along miles of road and park at over a dozen sites on the national forests for up to 70% of each year. The transient nature of the emitters is no justification for ignoring their effect on visual quality; if anything, their proposed ubiquitous presence throughout the western flank of the Olympic National Forest argues for more, not less, visual quality consideration.

---

[3] The LRMP prescribes visual quality objectives (e.g., retention, modification) and recreation opportunities (e.g. Roaded Natural, Modified, Rural) for each land allocation. These prescriptions generally reiterate that uses be harmonious in appearance with the natural setting. The EA fails to assess the effects the mobile emitters will have on meeting visual quality objectives or recreation opportunity spectrum ("ROS") prescriptions.

<u>Forest Service Response</u>: The Forest Service did not acknowledge that the EA fails to mention this 1990 LRMP standard. Nor did the Forest Service assess the mobile emitters' consistency with 1990 LRMP visual quality objectives and recreation opportunity spectrum prescriptions.

*FSEEE Objection*: FSEEE objects to the permitting decision because the Forest Service failed to address this mandatory 1990 LRMP standard and failed to comply with its terms.

In conclusion, the Forest Service should deny the Navy's permit application because Congress has not authorized military training as a permissible use of national forests. Even if military training were a permissible use, the Forest Service has failed to acknowledge or comply with relevant mandatory standards established in the 1990 LRMP.

Sincerely,

Executive Director