HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS,<br><br>Plaintiff,<br>v.<br><br>UNITED STATES FOREST SERVICE,<br><br>Defendant. | CASE NO. 3:17-cv-5747-RBL<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**INTRODUCTION**

THIS MATTER comes before the Court on Defendant United States Forest Service's Supplemental Brief in Support of Cross-Motion for Summary Judgment. Dkt. #27. The parties previously filed cross motions for summary judgment, and the Court ruled in favor of the Defendant on all claims except one: whether the Forest Service violated the NFMA and APA by granting a special use permit to the Navy without considering if there were reasonable private land alternatives. The Court stated that "the Forest Service committed an error by failing to provide any reason for why the Navy's training could not be accommodated on private land, as required by the Forest Plan." Dkt. #26, at 17. However, the Court went on to order additional

briefing on the issues of whether the Forest Service's error was harmless and, if not, what the appropriate remedy would be. *Id*.

# DISCUSSION

With its supplemental brief, the Forest Service submitted three declarations. Two, the declarations of John Mosher and Dean R. Millet, shed light on the Navy and Forest Service's process of ruling out private land. Mosher, a Navy Environmental Program Manager, states that he worked with a Navy Range Team starting in 2009 to evaluate sites for the Navy's mobile emitters.[1] He explains that the team reviewed a variety of maps and mapping programs to determine that private land would not be a suitable option for the mobile emitters. The reasons include the small amount of private land beneath the Olympic Military Operations Areas ("MOA"), its non-contiguous nature, the variety of owners, vegetation obstructions, lack of cliffs and ridges near roads, and a general absence of maintained roads. Dkt. #27-1, at 5-6. Mosher also states that he attended a meeting with Millet and other Forest Service personnel in November 2014, at which there was a "group discussion" of the private land requirement and the Navy's analysis. *Id*. at 7-8; Dkt. #27-3, at 2.

Millett, a District Ranger for the Olympic National Forest, ultimately approved the Navy's special use permit application. Dkt. #27-3, at 1. In addition to attending the November 2014 meeting, Millet also states that he and other staff "reviewed the application and justification

---

[1] "Mobile emitters" refers to the trucks used by the Navy as part of its electronic warfare training. To quote from the Court's previous order, "In simplified terms, 'electronic warfare' refers to the use of electromagnetic energy to disrupt or control access to the electromagnetic spectrum, which may be used for such purposes as navigation or communication. To conduct training, the Navy must simulate the types of electromagnetic energy that an enemy would generate in order to practice detecting and controlling these systems. One way that the Navy does this is through the use of trucks hauling the necessary equipment to emit an electromagnetic signal. These trucks are basically Ford F-350s carrying trailers with large antennae. To conduct training, the Navy drives these trucks to pre-selected locations and energizes the emitters, after which aircraft fly overhead and try to detect the signals." Dkt. #26, at 2-3.

why other lands would not be suitable." *Id.* at 3. In granting the permit, Millet was also "guided" by his personal knowledge of the area, in which most of the industrial private land within the MOA is at a lower elevation and flatter than Forest Service land, while the non-industrial holdings consist of small farms or ranches that would be unsuitable for mobile emitter activities. *Id*. at 4.

FSEEE argues that the Court may not consider these declarations because they do not satisfy any of the exceptions to the general rule that courts must confine themselves to the administrative record in an APA review. FSEEE also contends that the Forest Service's declarations do not really address whether the agency's error was harmless, but whether the agency erred at all. The Forest Service responds that the declarations are admissible to explain the agency's decision. It also adds that there is no Ninth Circuit authority stating that a court may not consider extra-record documents to determine whether a harmless error occurred or to fashion a remedy.

The Forest Service seems to have misconstrued the Court's prior order. The Court did not determine that the agency committed some procedural error by failing to "memorialize" its reasoning. Dkt. #27, at 6. FSEEE's claims were based on the NFMA's substantive requirements, not NEPA's procedural ones. See *Native Ecosystems Council v. U.S. Forest Serv., an agency of U.S. Dep't of Agric.*, 418 F.3d 953, 958 n.4 (9th Cir. 2005). Therefore, the Court's conclusion that the record did not explain the Forest Service's reasons for ruling out private land amounted to a conclusion that the agency did not come up with reasons at all. *See California Communities Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 993 (9th Cir. 2012) (the court's review focuses on the reasoning employed by the agency); *Native Ecosystems*, 418 F.3d at 965 n.11 (finding that the Forest Service had "not ensured the project [was] in compliance with" forest plan

1 requirements because it had failed to adequately explain its reasoning in the record). This is a result of APA review's epistemological limitations. Because courts cannot get inside agency officials' heads, evaluating an agency's decision-making process inevitably requires identifying a stand-in for the bureaucratic mind. That stand-in is generally the administrative record.

Consequently, supplementing the record with the Forest Service's declaration would necessarily involve revisiting the merits of the decision-making process itself. Expanding the universe of what went into the agency's decision by including all required considerations would render any error not just harmless but nonexistent. Indeed, this is likely the reason that neither party could find a Ninth Circuit case supplementing the record to decide the issue of harmless error – all of the exceptions identified by the Ninth Circuit are only relevant to whether an error occurred at all. *See Southwest Center*, 100 F.3d at 1450. Furthermore, allowing an agency to say through retrospective declarations that its error was harmless because it would have reached the same conclusion if it had done the required analysis would amount to a post-hoc rationalization. *See Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1124 (9th Cir. 2012). The Ninth Circuit has rejected such attempts in the past. *Nw. Res. Info. Ctr., Inc. v. Nw. Power & Conservation Council*, 730 F.3d 1008, 1019 (9th Cir. 2013) (rejecting the agency's "post-hoc litigation position" that its error was harmless because "no amount of public comment" would have led it to adopt a different methodology).

However, the fact that the Court cannot consider the Forest Service's declarations to decide harmless error does not change the fact that the declarations exist. If they did fall within one of the recognized exceptions allowing extra-record documents, the only reason for ignoring them would be their untimely submission after the initial Motion for Summary Judgment. Furthermore, as the Forest Service points out, these declarations may compel the conclusion that

any action the Court may require from the agency on remand would be a duplicative waste of time. Faced with a choice between mandating a wasteful outcome and revisiting an earlier conclusion, the latter option is clearly superior.

As a general rule, a court reviewing an agency action must limit itself to "scrutinizing the administrative record at the time the agency made its decision." *Asarco, Inc. v. U.S. Envtl. Prot. Agency*, 616 F.2d 1153, 1159 (9th Cir. 1980). However, this circuit has recognized several exceptions to this rule. Extra-record materials may be considered "(1) if necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) 'when the agency has relied on documents not in the record,' or (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter.' *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (quoting *Inland Empire Pub. Lands Council v. Glickman*, 88 F.3d 697, 703 (9th Cir. 1996)). These exceptions do not alter the principle that "review of an administrative agency's decision begins and ends with the reasoning that the agency relied on in making that decision." *California Communities Against*, 688 F.3d at 993.

The first exception is the only one potentially relevant here, but "this exception is so broad in its formulation, courts have been reluctant to invoke it." *Pub. Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982). Instead, "[w]hen there is a need to supplement the record to explain agency action, the preferred procedure is to remand to the agency for its amplification." *Id*. There are, nonetheless, some instances where courts have reviewed "affidavits or testimony" to obtain "such additional explanation of the reasons for the agency decision as may prove necessary." *Id*.; *Camp v. Pitts*, 411 U.S. 138, 143 (1973). Where there is "no substantial basis" to conclude that an agency's explanation is "simply an after-the-fact

rationalization," affidavits or other testimony may be used to show that an agency's action was not an abuse of discretion. *See San Luis & Delta-Mendota Water Auth. v. United States*, 672 F.3d 676, 714-15 (9th Cir. 2012); *see also Midwater Trawlers Coop. v. Dep't of Commerce*, 393 F.3d 994, 1008 (9th Cir. 2004) (affirming order to supplement the record with documents and declarations to permit the Fisheries Service to "more fully explain . . . its adoption of the sliding scale methodology"); *San Diego Navy Broadway Complex Coal. v. U.S. Coast Guard*, No. 10CV2565-IEG RBB, 2011 WL 1212888, at *6 (S.D. Cal. Mar. 30, 2011) (supplementing the record with a declaration from the Coast Guard explaining the agency's reasons for eliminating the security zone around cruise ships).

Typically, when courts supplement the administrative record, they do so in response to a motion from the agency or *sua sponte* after determining its necessity for effective judicial review. *See, e.g., Dunn v. F.D.I.C.*, No. CV 08-06652 MMM AJWX, 2012 WL 1986042, at *7 (C.D. Cal. May 31, 2012) (ordering supplementation *sua sponte*); *Midwater Trawlers*, 393 F.3d at 1007 (affirming district court's granting of the agency's motion to supplement the record). Nonetheless, despite the unusual procedural posture, supplementing the record is appropriate here.

First, as the previous order recognized, it is not possible to tell from the administrative record alone whether the Forest Service had adequate reasons for deciding that private land could not reasonably accommodate the Navy's use. This means that additional explanation is the only way to determine whether the agency actually considered such reasons. Second, if the Forest Service did sufficiently consider private options before granting the permit, it would defeat the purpose of remand. Given the Forest Service's discretion in interpreting its own Forest Plan and the Plan's very forgiving requirement that a permit may be authorized if the special use cannot

"*reasonably* be accommodated on private land," the agency's task on remand would not be strenuous. AR 022641. If the Forest Service has actually done this work already, it makes no sense to require it again. *See Midwater Trawlers Coop. v. Dep't of Commerce*, 393 F.3d 994, 1007 (9th Cir. 2004) (affirming the district court's decision to supplement the record in lieu of remand where it would be the "most reasonable and efficient use of resources" because the agency had "already supplied 'further justification for the current allocation'"). It is also worth noting that FSEEE did not challenge the permit on procedural NEPA grounds, which could only be corrected by performing the missing procedural requirement on remand.

Finally, there is not a "substantial basis" to conclude that the Forest Service's declarations amount to a mere after-the-fact rationalization. *See San Luis & Delta-Mendota*, 672 F.3d at 714-15. The declarations do not describe the substantive reasons why rejecting private land in the abstract, but rather attest to the fact that these reasons were considered prior to granting the permit. The Mosher declaration states that the Navy applied its electronic warfare training criteria to the private land options within the Olympia MOA and found them unreasonable. Dkt. #27-1, at 4-7. This determination was then discussed at a November 2014 meeting with Forest Service personnel, including Dean Millet. *Id*. at 7-8; Dkt. #27-3, at 27-3. Millet also states that he reviewed the private lands requirement with other staff and approved the permit partly based on his personal knowledge that private land in the Olympic MOA is either low-elevation or consists of small plots that would not suit the Navy's needs. Dkt. #27-3, at 3-4.

The nature of these declarations also distinguish this case from *League of Wilderness Defs./Blue Mountains Biodiversity Project v. United States Forest Serv.*, No. 3:10-CV-01397-SI, 2012 WL 13042847, at *3 (D. Or. Dec. 10, 2012). There, the declarations submitted by the

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 7

agency "presume[ed] that revising the cumulative impacts analysis is a formality that [would] not alter [the agency's] ultimate conclusion." *Id*. Here, in contrast, the declarations do not make presumptions but rather describe events that were missing from the administrative record.

After considering the record in addition to the declarations submitted by the Forest Service, the Court holds that the agency did act consistently with the Plan's requirements. The Navy's review resulted in several rational grounds for rejecting private land as unreasonable, and the Navy discussed these findings with the Forest Service. This was sufficient to support the Forest Service's conclusion that the Navy's use could not be reasonably accommodated on private land.

FSEEE's contention that the Navy's map-based review process was insufficient is unpersuasive. As the Court has noted several times, the Plan's requirement to rule out private land is not highly restrictive or specific, and a map-based review is not inconsistent with the Plan. FSEEE's objections that the Mosher's conclusions with the Navy Range Team were not in the record is likewise unpersuasive. As the Court noted earlier, FSEEE does not challenge the Forest Service's decision on procedural grounds; indeed, if every aspect of an agency's explanation was required to be in the record there would be no purpose for the first exception from *Southwest Center*, 100 F.3d at 1450 (9th Cir. 1996).

If the Forest Service had simply explained its reasoning in the record, much work and litigation may have been avoided. However, "its failure to give full contemporaneous explanations does not amount to an abuse of discretion or otherwise invalidate its actions." *San Luis & Delta-Mendota*, 672 F.3d at 715. To comply with the NFMA and its Forest Plan, the Forest Service simply needed to show that it considered private land and had a rational basis for

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 8

its determination. It has now satisfied that requirement and the Court will not order remand when it would be a useless exercise.

## CONCLUSION

For these reasons, the Forest Service's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

Dated this 22nd day of January, 2019.

_Ronald B. Leighton_
Ronald B. Leighton
United States District Judge